CAROLINA PORTLAND CEMENT CO. v. ANDERSON.

(Circuit Court of Appeals, Fifth Circuit. March 14, 1911.)

No. 2,090.

1. SHIPPING (§ 132*)—LIABILITY FOR DAMAGES TO CARGO—UNSEAWORTHINESS —HARTER ACT.

Proof that a vessel within a few hours after leaving port, and before encountering any peril of the sea, sprung a leak from defective butts in her bottom, and that, in addition, her steam pump was not in good working order, and broke down when put in use, raises a presumption that she was unseaworthy at the beginning of the voyage, which is not rebutted by evidence merely of previous diligence, and, in the absence of a stipulation therefor in the bill of lading, the owner is not exempted by Harter Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 (U. S. Comp. St. 1901, p. 2946), from liability for damage to cargo caused by such leakage.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 132.*]

2. SHIPPING (§ 148*)—FREIGHT—EFFECT OF LOSS OR DAMAGE TO CARGO.

Where a cargo owner is allowed as damages against the vessel for loss of cargo its full value at the port of delivery, he is not entitled to a reduction in freight on account of the loss.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 148.*]

Appeal from the District Court of the United States for the Southern District of Georgia.

Suit in admiralty by the Carolina Portland Cement Company against the schooner William H. Sumner, Charles Anderson, master, claimant. Decree for claimant, and libelant appeals. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. P. K. Bryan, for appellant.
Anton P. Wright and W. C. Hartridge, for appellee.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

PARDEE, Circuit Judge. This is a libel by the Carolina Portland Cement Company against the American schooner William H. Sumner for damages to a cargo of Portland cement, wherein the cement was alleged to be damaged by sea water on a voyage from New York to Savannah in July, 1906, in the sum of $2,500.

The bill of lading was as follows:

"Shipped in good order and condition by Alpha Portland Cement Company on board the schooner called the William H. Sumner, whereof Charles Anderson is master, now lying at the port of New York and bound for Savannah, Ga., to say, nine hundred (900) barrels of Alpha Portland cement, 400 pounds each; fifteen thousand two hundred bags (15,200) of Alpha Portland cement, 95 pounds each; vessel not accountable for condition of bags. Weight and contents unknown to master, being marked and numbered as in the margin and are to be delivered in the like order and condition at the port of Savannah, Ga. (the dangers of the seas only excepted), unto Carolina Portland Cement Co. or to their assigns he or they paying freight for the said cement, one dollar and ten cents ($1.10) per ton of 2,000 pounds, without primage and average accustomed.

"In witness whereof the master or purser of the said vessel hath affirmed to three bills of lading of this tenor and date one of which being accomplished the other to stand void.

"Dated in New York the 5th day of July, 1906.
                                              "Chas. Anderson."

The answer of the respondent, claimant of the schooner William H. Sumner, sets up the defense of "dangers of the sea," which caused the vessel to spring a leak in her butts in her bottom, which enabled the sea water to gain access to the hold thereof.

The claimant also brings a cross-libel against the Carolina Portland Cement Company for the freight on said cargo in the sum of $992.20, being the freight on the total amount of the cargo; and, also for the sum of $98.78 general average claimed against the company, shipper and owner of the cargo. The answer of the Carolina Portland Cement Company to the cross-libel denies the allegation of delivery of the cement, except in a greatly damaged condition by sea water, and charges that the damage was caused by the unseaworthiness of the said vessel. The District Court on hearing the case dismissed the libel for damages to the cargo and sustained the cross-libel, and decreed against the Carolina Portland Cement Company for the freight, in the sum of $992.20, being the freight on the total amount of the cargo; and also for the sum of $98.78, general average claimed against the company, shipper and owner of the cargo. In a former decision we held that the schooner William H. Sumner was not seaworthy at the beginning of the voyage, but, as the owners had used due diligence to make her seaworthy, they were in this suit entitled to the benefit of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]); and thereafter on application we reconsidered our former decision and granted a rehearing.

On this rehearing and full argument, we have again considered the evidence and the law applicable thereto.

[1] We now hold that the William H. Sumner was not seaworthy at the inception of the voyage under the test of seaworthiness as given in The Silvia, 171 U. S. 462–464, 19 Sup. Ct. 7, 43 L. Ed. 241, because the proof is that within a few hours after leaving port, and before encountering any peril of the sea, she sprung a leak from defective butts in the bottom of the vessel; and that, in addition, her steam pump was not in good order and broke down when put in use, and from these circumstances the presumption of unseaworthiness arises. Pars. Mar. Law, 138; 2 Arnold on Ins. (Perkins' Ed.) 689; The Planter, 2 Woods, 490–491, Fed. Cas. No. 11,207a; Work v. Leathers, 97 U. S. 380, 24 L. Ed. 1012; Pac. Coast S. S. Co. v. Bancroft-Whitney Co., 94 F. 180–196, 36 C. C. A. 135, and cases there cited. And see The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65. This presumption of unseaworthiness is not rebutted by evidence of previous diligence, nor by the proof as to subsequent storms and perils of the sea; and, as the bill of lading contained no exception as to seaworthiness, the owners are not entitled to the benefit of the Harter act. See The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181. It follows that the decree of the District Court should be reversed and a decree rendered for the appellant.

In order to save a reference to ascertain the damages and amount of recovery, we have taken the trouble to go over the evidence. From our examination we conclude the appellant's damages to be as follows:

| | |
|---|---|
| 310 barrels of cement turned to stone @ $1.90 | $ 589 00 |
| 600 wooden barrels @ .35 | 211 40 |
| 358 sacks of cement @ .47½ | 170 15 |
| 2,550 cloth sacks @ .10 | 255 00 |
| Labor pay rolls | 356 85 |
| Four and one-half (4½) weeks' wages to Chisolm | 39 00 |
| Making a total of | $1,621 40 |
| From this amount should be deducted for contract freight | 992 30 |
| Balance | $ 629 10 |

for which appellant should have a decree.

We reject the claim for Chisolm's personal account $102.03, and Ford's expense account $15.65, as we find no sufficiently itemized proof in the record.

[2] We reject appellant's claim for deduction of freight on 77 tons of cement turned to stone based on Ridyard v. Phillips, 4 Blatchf. 444, Fed. Cas. No. 11,820, Duthie v. Hilton, L. R. (C. P.) vol. 4 (1868–9) 138, Asfar & Co. v. Blumdell, vol. 1, L. R. (Q. B. Div. 1896) 123–127, because we allow appellant full value thereof based on prices at port of delivery.

And we reject claimant's demand for contribution for expenses in Philadelphia in refitting.

The decree of the District Court is reversed and the cause is remanded, with instructions to enter a decree in favor of the Carolina Portland Cement Company against the master of the schooner William H. Sumner and his sureties for the sum of $629.10, with legal interest from judicial demand and for all costs.