**WARREN & ARTHUR SMADBECK, Inc., v. HELING CONTRACTING CORPORATION.**

**Nos. 391, 392.**

Circuit Court of Appeals, Second Circuit.

June 1, 1931.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin, Wharton Poor, and James McKown, Jr., all of New York City, of counsel), for appellant.

Samuel J. Rawak, of New York City, for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellee's dredge was chartered, under contract dated September 5, 1928, for use in dredging sand used for making land on Long Island. She was delivered at Mastick, Long Island, on the 17th of September, 1928, and was used off and on until November 5, 1928, when she was destroyed by fire, together with a barge which we find was not the subject of the charter, but which the appellee consented appellant might use. There was some oil on the barge at the time, which was used by the appellant, and, it is claimed, was not paid for. It became necessary to make repairs and supply new parts to the dredge because her machinery broke down from time to time.

The charter contained the following provision: "Twenty-second: The charterer agrees to always maintain the dredge, wherever located, in good operating condition, the usual wear and tear excepted. In the event of the loss of or damage to said dredge by reason of fire and/or other casualties during the pendency of this charter, or any extensions thereof, this charter or any extension thereof shall continue in full force and effect in so far as the obligations of the charterer are concerned."

The cause of the fire was unknown. The court below held the appellant responsible for the loss because it had failed to return the dredge at the end of the charter period and that the failure to do so imposed on the charterer an absolute liability to pay for the vessel; that the burden of proving the cause of the fire, or negligence in the care of the vessel rested on the appellant. Moreover, it held that there was no agreement to suspend the obligations of the charterer even though a fire destroyed it. The court held that the barge had been taken from the possession of the appellee wrongfully and that the appellant was therefore responsible for its destruction.

The proof shows that the shipowner prepared this charter, and liability is attempted to be imposed under the provision quoted above. There is no clause in the charter which holds the charterer liable as an insurer against fire, and no provision should be read into it reaching that result unless it be stated clearly and in unambiguous language. Whenever a charterer has been held responsible, it has appeared that he has promised to return the barge in the same condition as received with the usual wear and tear excepted and has failed to show that his care of the vessel excuses him. Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093; Shamrock Towing Co. v. City of New York, 32 F. (2d) 684 (C. C. A. 2); Kohlsaat v. Parkersburg & Marietta Sand Co. (C. C. A. 4) 266 F. 283, 11 A. L. R. 686; Mulvaney v. King Paint Mfg. Co., 256 F. 612 (C. C. A. 2). A mere promise to return in like condition does not impose an absolute obligation and is conditioned upon the continued existence of the vessel. Under the provision of this charter (clause 21), delivery was fixed at Mastic, N. Y., "at the termination of this charter or any extensions thereof, or, if the dredge is not at Mastic, N. Y., at the expiration of this charter or any extension thereof, the charterer agrees to tow or to cause the dredge to be towed to any point named by the owner equal

to the distance which the dredge then is from Mastic, N. Y."

The case of Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366, contained a provision whereby the charterer assumed liability as an insurer. Wandell v. New Haven Trap Rock Co. (C. C. A.) 285 F. 339. But the provision (twenty-second) of the charter quoted above does not assume the obligation of an insurer against loss from fire. The phraseology of the clause is not clear, but in any case, it does not assume the obligation of an insurer against total loss by fire destruction. There is some evidence in the record that the parties discussed the insurance on the dredge, and, although contradicted by the appellee's witness, it was testified that the appellee agreed to insure the vessel against fire loss.

■ To establish liability on the part of the appellant for fire loss, it was necessary for the appellee to prove some negligence which caused the fire. Southern Ry. Co. v. Prescott, 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836; Cau v. Tex. & Pac. Ry. Co., 194 U. S. 427, 24 S. Ct. 663, 48 L. Ed. 1053; Memphis & C. Railroad Co. v. Reeves, 10 Wall. (77 U. S.) 176, 19 L. Ed. 909. Nor is there a presumption of negligence arising by reason of the fire. Accidental fires occur without negligence, and the occurrence of the fire does not justify the inference of negligence. In the absence of some explanation as to the origin of the fire and evidence tending to show that it was within the power of the appellant to have avoided its occurrence by the exercise of reasonable care, no presumption of negligence is raised so as to justify the imposition of liability. Moreover, the appellant submitted all the evidence within its power, and established that the dredge had worked up to 5 o'clock; that its watchman went on board the dredge after the repairmen had left that day and discovered no fire. The dredge had electrical appliances on board, and it is possible that a short circuit may have caused the fire, but, in any case, there was no evidence to establish fault on the part of the appellant, and the cause of the fire remains unknown.

■ The barge was offered to the charterer at the time of the charter, and the appellant stated that it did not want it at that time. Later the appellant was obliged to take off the cutter because it was unable to work and the barge was necessary to store it. The charterer's superintendent sent a man to get it, telling the man to get permission from the owner's representative. He could not be found. The barge was urgently needed, and the charterer's man brought it to the dredge, and it was used to store the cutter. The owner was informed of this within the next day or two, and he acquiesced in its use and permitted it to stay there from September 24, 1928, when it was brought to the dredge, until November 5, 1928, the date of the fire. The charterer used oil from the barge. While the cutter lay on the barge, the owner was making arrangements to have it repaired. We do not agree that the charterer was told to return the barge at once. It remained there for six weeks, and apparently no demand or effort was made to recapture it, as would be expected if it was taken without permission as claimed. It was serving a useful purpose for repairing the broken-down cutter. The same reasons which exonerate the appellant from liability for the loss of the dredge, apply to the loss of the barge.

The appellant should pay the balance due of the charter hire up to the day of the fire. The various breakdowns disclosed in the record showing that from time to time the dredge was out of repair and unable to do the appellant's work, and the consequent loss of time was not of such great magnitude as to warrant a deduction from charter hire. The appellee may have a decree for the amount thus due. It may also have a decree for such oil as was used and not paid for.

■ The appellant argues that the admiralty court had no jurisdiction, for the reason that the dredge had been chartered for a nonmaritime adventure in sucking sand from the bottom of the Great South Bay and discharging it on shore for the purpose of building up new land. But the charter upon which the suit rests was a maritime contract, and the admiralty court had jurisdiction. Bowers Hydraulic Dredging Co. v. Federal Contracting Co., 148 F. 290 (D. C., S. D. N. Y.), affirmed 153 F. 870 (C. C. A. 2).

Decree modified accordingly.