81 So.2d 723 (1955)
Charles F. BYERS, Appellant,
v.
Rachel GUNN, a minor, by W.B. Parrish, Jr., as her next friend, and W.B. Parrish, Jr., as guardian of the person and estate of Rachel Gunn, a minor, Appellees.
Supreme Court of Florida. Division B.
July 8, 1955.
Rehearing Denied July 29, 1955.
*724 C.C. Howell, Jr., Luke G. Galant and Howell & Howell, Jacksonville, for appellant.
A.Z. Adkins, Jr., Fagan & Crouch and Osee R. Fagan, Gainesville, for appellee.
THORNAL, Justice.
Appellant Byers was defendant in the Circuit Court in an action for damages brought by appellee Rachel Gunn, a minor, through her next friend and guardian, for injuries and damage allegedly resulting from the operation of the automobile of Byers by his teen-age daughter. Byers appeals from a verdict and judgment awarding $5,500 damages to Rachel Gunn for the injuries received, and $1,052.95 to her guardian for medical expenses. After an adverse ruling of the trial judge on motions by the defendant below to set aside the verdict and to enter a judgment for the appellant this appeal was perfected.
The evidence shows that the teen-age daughter of the appellant, Sarah Byers, while driving his automobile with another teen-age girl as a passenger, had stopped the car at a stop street in the vicinity of the P.K. Yonge School in Gainesville. While the car was stopped with the motor still running, Sarah was hailed by three teen-age boys and a teen-age girl who turned out to be Rachel Gunn. The three boys and the girl walked over to the automobile and asked Sarah to take them for a ride. She refused. She rolled up the windows and locked the doors on the left side of the car, and at her direction, her passenger did the same thing on the right. After a moment of conversation the three boys and Rachel proceeded to seat themselves on the front fenders and hood of the car. Two of the boys sat on the left side and Rachel and one of the boys on the right *725 side. With these young people draped all over the automobile, Sarah started the car in motion. She started slowly but increased her speed until, according to various witnesses, she reached a speed varying from 15 to 40 miles per hour. Having proceeded around a corner and about two-thirds of another block, the driver of the car undertook to bring it to a stop, for the reason, as she stated, that "they couldn't ride around like that all day". Apparently, she stepped on the brake twice. The first time the car did not come to a complete stop whereupon the boys stated they began to call out to her to stop the car. She then brought the car to a full stop. After she stepped on the brake the first time, the girl on the fender, Rachel Gunn, fell off and was severely injured.
The three boys and Rachel testified that they had no intention of actually riding on the front of the car; that they did not expect Sarah to drive off with them on the outside of the car; that they were all friends and that they thought if they would just sit there Sarah would eventually give them a ride inside the car.
Sarah, in effect, testified that she saw the four of them walk up to the car; that she did not actually see Rachel on the right front fender; that one of the boys on the left side of the car was practically draped across the hood in front of the windshield and that she could hardly see where she was going. She started the car in motion because "they just couldn't sit there." She insisted, however, that she was not aware of the presence of Rachel on the car. Nevertheless, there was introduced into evidence a deposition taken prior to the trial in which Sarah admitted that there were two people on the left side of the car and although she said she did not remember who was on the right fender, she did concede that there were two on the right fender also.
There was a direct conflict in the testimony as to the extent to which the vision of the driver of the car was blocked by the boy stretched across the hood and, of course, there was conflicting evidence on whether or not Sarah actually could have seen the plaintiff, Rachel. The appellant-owner of the automobile and father of the youthful driver insists upon reversal on the following propositions, to wit:
1. The evidence was not sufficient to charge the driver of the car with an awareness of the presence of the plaintiff, an admitted trespasser, on the fender and that, therefore, as a matter of law she could not have been guilty of negligently injuring the plaintiff under the evidence in this case.
2. Even if the driver of the car was aware of the plaintiff's presence on the fender, still there was not sufficient evidence of negligence under the circumstances to justify a verdict for the plaintiff.
3. The plaintiff was guilty of contributory negligence and had assumed the risk of injury both as a matter of law and that the lower court should have so instructed the jury.
In urging that the evidence was insufficient to charge the driver of the automobile with the awareness of the presence of the plaintiff, the appellant relies upon an asserted rule of evidence to the effect that the driver of the car specifically and positively denied that she saw Rachel on the car and that the only evidence available to the plaintiff to show the contrary was circumstantial. He contends that under the rule applicable the inferences permitted to be drawn from the circumstantial evidence are not sufficient and cannot be employed to overcome the positive testimony. Appellant does not comment on the effect of the deposition in which the driver of the automobile admitted that she knew there were two people on each side of the car.
The injured girl was a trespasser and the trial judge so informed the jury. The rule of law is clear that the standard of care owed to a trespasser is to refrain from committing a willful or wanton injury. This rule, however, gives way to the further proposition that after discovery of the peril to a trespasser, the driver of the automobile is then duty-bound to exercise reasonable care and caution under the *726 circumstances. Absent contributory negligence on the part of the injured person there would appear to be no justifiable excuse for injuring a person in a position of manifest peril if such injury can be reasonably avoided, or as otherwise stated, if such injury can be avoided by the exercise of reasonable care and caution in the light of all of the circumstances in the particular case. See Jewel Tea Co. v. Sklivis, 231 Ala. 590, 165 So. 824; Cavezzi v. Cooper, Fla. 1950, 47 So.2d 860; Satin v. Hialeah Race Course, Fla. 1953, 65 So.2d 475.
Appellant, however, harkens back to the rule of evidence which he relies on and which he asserts to be that the inferences to be drawn from circumstantial evidence cannot be used to offset positive factual testimony inconsistent with such inferences. Applied to the case at bar, he contends that the driver of the automobile having testified that she positively did not see Rachel on the right fender of the car conclusively out-weighs and as a matter of law precludes any inferences to the contrary to be drawn from all of the circumstances.
The crux of appellant's contention is that his daughter who drove the automobile was not guilty of willful and wanton misconduct; that the only way she could be charged with the duty to exercise reasonable care as contrasted to the usual standard of care applied in the case of a trespasser would be to show that she was aware of the presence of Rachel on the front of the automobile and saw her in a position of peril in time to avoid the injury, and that such awareness cannot be established by inferences to be drawn from circumstantial evidence in the face of positive testimony to the contrary. We cannot agree with this contention in this case because it precludes an appropriate evaluation of all of the testimony by the jury especially in view of the weakening effect of Sarah's deposition as contrasted to her testimony from the witness stand.
The rule followed by this Court can best be summarized by the opinion of Mr. Justice Hobson in Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403, 405, in which it was stated:
"As aforestated, all of the evidence relied upon by appellant is circumstantial in character. In the comparatively recent case of City of Jacksonville v. Waldrep, Fla., 63 So.2d 768, we reaffirmed the rule that when circumstantial evidence is relied upon in a civil case as a method of proof any reasonable inference deducible therefrom which would authorize recovery must outweigh each and every contrary reasonable inference if the plaintiff is to prevail. We quote from our opinion in the case of King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858, 859: `Where circumstantial evidence is relied on in a civil case to prove an essential fact or circumstance essential to recovery, the rule is that the particular inference of the existence of the fact relied on as arising from the circumstances established by the evidence adduced, shall outweigh all contrary inferences to such extent as to amount to a preponderance of all of the reasonable inferences that might be drawn from the same circumstances.' See Fireman's Fund Indemnity Co. v. Perry, 149 Fla. 410, 5 So.2d 862, and cases cited in our opinion in City of Jacksonville v. Waldrep, supra.
* * * * * *
"The fact that circumstantial evidence is relied upon in a civil action at law does not alter either the rule that it is solely within the province of the jury to evaluate or weigh the evidence or that the burden of establishing a right of recovery by a preponderance of the evidence is upon the plaintiff. Consequently, in such a case if the circumstances established by the evidence be susceptible of a reasonable inference or inferences which would authorize recovery and are also capable of an equally reasonable inference, or inferences, contra, a jury question is presented. * * *"
*727 The testimony of the driver of the automobile with reference to her lack of awareness of the presence of the other girl on the car is substantially weakened by the deposition which she gave prior to the trial stating that she was aware of two people on each side of the car and there is no evidence whatever that there were any other young people in the immediate vicinity of the car when she was first approached by the group of four, including the plaintiff below. These are factors which the jury might properly consider along with the circumstantial evidence. The problem was properly handled by the trial judge.
Finally, appellant urges reversal on the separate grounds that the record shows contributory negligence and assumption of risk by the plaintiff below as a matter of law. Again we cannot agree with this contention.
At times the line of demarcation between contributory negligence and assumption of risk is exceedingly difficult to define. A generally safe rule to follow is that the latter involves a choice made more or less deliberately and negatives liability. Contributory negligence, on the other hand, implies the failure of the plaintiff to exercise due care. Some courts have stated that assumption of risk is a mental condition of willingness, whereas contributory negligence is more a matter of conduct.
Ordinarily the doctrine of assumption of risk pertains to controversies between masters and servants although it may be applicable in other cases. Theoretically, it rests upon a contract or if not exclusively upon a contract, it involves an act done so spontaneously by the party against whom the defense is asserted that he amounts to a volunteer and any evil result of his act must be attributable to an exercise of his free volition instead of to the conduct of his adversary. Whenever a person does anything dangerous he encounters the risk but this does not necessarily mean legally that he assumes the risk. See City of Jacksonville Beach v. Jones, 101 Fla. 95, 131 So. 369, 133 So. 562; Bartholf v. Baker, Fla. 1954, 71 So.2d 480, and cases cited.
In this case it was for the jury to determine whether the driver of the car met the standard of care required of her or conversely whether the injured girl knowingly and voluntarily assumed the risk of the danger or proximately contributed to her own injury. Upon a consideration of all of the evidence it cannot be concluded as a matter of law that the plaintiff was guilty of contributory negligence or assumption of the risk involved. The jury was entitled to believe the account as related by the witnesses for the plaintiff. If they did, they were fully justified in rendering a verdict for plaintiff. Although admittedly in this case these questions are close ones, this Court does not feel justified in substituting its judgment for that of the jury or in reversing the Circuit Judge because he submitted the case to the jury and subsequently refused to enter a judgment for the defendant below regardless of the verdict. In an action of this type unless there is no evidence from which the jury could reasonably find negligence or similarly unless there is no substantial testimony on the defenses asserted, the case should be left with the jury under proper instructions by the court. The trial court, therefore, committed no error in this regard.
The record below indicates that this cause arose out of a teen-age escapade in which the carefree and thoughtless attitude of a group of high school youngsters could well have resulted in a more serious tragedy although the injury here was bad enough. It is to be hoped that repetition will be avoided by the example.
Finding no error, the judgment of the lower court is
Affirmed.
DREW, C.J., and THOMAS and HOBSON, JJ., concur.